This is our Thursday session, and I am honored this morning to be seated with two of my colleagues, one of whom I haven't been seated with yet on a panel. Judge Carson, to my left, is our newest judge, and I think he's been on the bench about a year. From Roswell, New Mexico. Does that sound about right? A year? Eighteen months, but who's counting? Oh, I'm sorry. Whoops. And to my right, our senior judge, Monroe McKay from Utah. How many years for you, Monroe? Forty-four. Oh, my goodness. Okay. So you have some extremes, and it's five for me, by the way. So you have the newest judge and the most senior judge on the court. I love it. I love it. All right. Thank you. And the first case we'll call is United States v. Fagatele, 18-4004. Good morning, Your Honors. May it please the court, counsel for the United States, Jessica Stengel appearing on behalf of Mr. Fagatele. Thank you. Utah third-degree aggravated assault is not a crime of violence. The government concedes it does not fall under the enumerated clause. The only dispute is whether it falls under the force clause. Based on the plain language of the statute, Utah aggravated assault sweeps more broadly than the force clause contemplates, and as such, it is not a crime of violence. The analytical approach is fairly, is quite simply laid out. We start with a categorical approach in which we look at the plain language of the statute to determine if it's divisible. This court basically decided in Betra that Utah assault, aggravated assault, excuse me, is divisible with regard to punishment, but not as to the ways it can be committed. As such, the third-degree aggravated assault is not divisible, and we are stuck with the plain language of the statute, which says an assault committed using a deadly weapon, other means, or force can be an aggravated assault. Other means is distinct from force. In fact, the Utah legislature was quite clear in 1974 when they amended the statute to include other means. In 1973, the statute said aggravated assault was committed using a deadly weapon or when there was bodily injury. This limited prosecutors in terms of what they could charge. In 1974, they amended the statute to include a deadly weapon, other means, or force. And it is evident from the plain language that other means is not force and other means is broader than force. It includes an entire category of non-forceful, yet still assaultive conduct. So give me an example of what other means could be that doesn't require force. The hypotheticals are innumerable. One example could be, as we have thought about this, me driving and you put a snake in my car. Okay. The snake in and of itself is something that could cause bodily injury. Now, to get to the aggravated, and that could be a symbol of assault. To get to the aggravated assault, we just change the circumstance in which you put the snake in my car. Instead of driving around downtown Salt Lake, we are now on Highway 70, where the speed limit is 80 miles an hour in Utah. How is the snake example physical? How does it satisfy the physical force requirement? It doesn't, and that's the point. Okay. This is the other means. All right, we're talking other means. Right. All right, and it requires simple assault. Right. Which, at its least, offensive conduct is nothing more than an offensive touching. And Utah has been quite clear on this in their case law, where simple assault, gross lewdness, and forcible sexual abuse all require the same conduct, which is an offensive touching. And no court, to my awareness, at this point has said an offensive touching constitutes the violent physical force necessary, or contemplated even, to put a crime into the violent felony category. Utah focuses on the conduct, not the result. And that's the key distinction here. Doesn't a simple assault, though, under Utah law, require an intent to do bodily injury? It does not, Your Honor. It is the act itself. There is no intent for a specific outcome. And Utah law seems to be quite clear in terms of they either criminalize conduct or they criminalize the result. And Utah assault, both simple and aggravated, is aimed at criminalizing conduct. The result is almost irrelevant based on the plain language of the statute. Let's back up a minute about whether assault, regular assault, requires an intent to do bodily injury. So I'm looking at the definition here. Assault is an attempt with unlawful force or violence to do bodily injury to another. That seems to require an intent to do bodily injury. There are three different ways someone can commit. Right. I'm going to get to the next two. Let's step through them. Do you agree with me on that one? I think an attempt requires, yes, some level of a mens rea. A threat accompanied by a show of immediate force or violence to do bodily injury to another. An immediate show of unlawful force or violence, yes. It doesn't say unlawful. It says immediate force or violence. The threat part is what we're talking about. Right. Yes. Okay. An act committed with, this one does say unlawful force or violence, that causes bodily injury to another or creates a substantial risk of bodily injury to another. And there is no mens rea requirement as to the outcome. Okay. All right. I'm with you. Go ahead. So, and this is going back to the analytical approach, which is the categorical approach. And we start with the aggravated assault based on the plain language of the statute. It's not divisible. So we are looking at the least act criminalized, which would be an act committed with unlawful force or violence, which is the offensive touching done in a manner that aggravates the risk, for lack of a better word. And Utah legislatures were clear. They included other means as distinct from force to allow prosecutors the ability to prosecute those who've committed aggravated assault using non-forceful conduct. And if there are no further questions, I will reserve the remainder of my time. Thank you. Thanks. Good morning, Your Honors. May it please the Court. I'm Ryan Tenney, and I'm here on behalf of the United States. The Utah aggravated assault statute has existed since 1974, and it's been applied in scores of cases since then. And yet despite this, Mr. Fagatelli points to no case in which a Utah defendant was convicted of aggravated assault where he did not use or attempt to use or threaten to use force that would qualify as physical force under the Johnson-Stokelyn definition. This matters. This matters because the categorical approach cases repeatedly say that there has to be a reasonable probability that the statute would actually be applied to non-violent conduct. And so in the absence of any case law from Utah, from Utah's appellate courts, his claim fails for that reason alone. And so the snake example is not a reasonable probability? Is that your argument as to that? That would be our first argument as to that. If he can find a Utah case that- Well, he doesn't have to find a specific case. Doesn't it just have to be reasonable? Well, the starting place for the reasonable probability analysis is to look to what the state's appellate courts have done. Alternatively, you can look to the text of the statute itself. But the starting place for the Duenas-Alvarez reasonable probability argument has always been the case law. I'm not aware of any case that even approaches the snake example. And so if such a case existed, we'd go there. But it doesn't exist. But our sort of first initial response to this sort of overarching argument that he's making is, we have 40 years of case law from the Utah courts about what this statute means. He can't point to a single example in which this statute has ever been violated and then affirmed on appeal in which they did not use physical force. That's a problem for him. What's your best case that says that if there's 40 years of precedent, not applying a statute in the way somebody argues, that that would be controlling for us? Well, it starts with the Duenas-Alvarez case from the U.S. Supreme Court. Moncrief v. Holder talks about this as well. And then this court picked up on that in the Tiddy's decision. So all of those cases have applied that. And so this is an established feature of this jurisprudence. As we look to the state case law, we start there. But even moving beyond that, even moving to the text of the statute, his argument is a very technical parsing of the Utah Aggravated Assault Statute. And it turns on the meaning of the word or. As I understand it, his argument is because or is ordinarily disjunctive, when the Utah legislature says other means or force, means must mean something different than force. And I want to respond to that on three different levels. First of all, as we've pointed out in our brief, the word or commonly is used to link synonymous concepts. Perhaps it's not the most ordinary use of it, readily concede that. But it does commonly link them. And a number of cases that we've pointed to have done this exact thing. My favorite of the cases is the Colorado decision, People v. Swain, where the Colorado statute defines the term driver as someone who drives or is in actual physical control. Nobody would think that those mean different things. And so he comes back in his reply brief and he says, well that may be true in those instances, but what makes this different is that the words means and force are not naturally synonymous. So he's trying to cabin that line of cases in that way. But it's possible to define those words to have similar meanings. In fact, the dictionaries do this very thing. Merriam-Webster dictionary lists as one of the definitions for means, quote, something useful or helpful to a desired end. And then it lists as one of the definitions for force, quote, the cause of motion or change. And so in this sense, I mean, these words both have multiple possible meanings. But one possible meaning for both of them is the means by which you cause something to happen, the means by which you change something. The Oxford English Dictionary does something similar. An online version of it, as of Monday, definition number 5B for the phrase by force means, quote, by employing violence by violent means. And definition number 16, as of Monday, defines the phrase by force of as, quote, by dint of, by virtue of, by means of. And so the dictionaries commonly recognize that there can be a usage link. And that gets me to my third point, which is that his argument really works best if you focus in on the word or in a real sort of tunnel vision way, if you sort of remove it from its surrounding context. That's how he gets you where he wants you to go. But the problem is this isn't how statutory interpretation works. He makes this claim in his reply brief, that you don't look to the context, the surrounding context, unless the term is ambiguous. And that's incorrect as a matter of statutory interpretation. Let me give you a couple of cases that establish that. The King versus Burwell decision. It's a 2015 Supreme Court decision. It's one of the Obamacare decisions. Page 2489 of that decision says, quote, when deciding whether the language is plain, we must read the words in their context, and with a view to their place in the overall statutory scheme. Our duty, after all, is to construe statutes, not isolated provisions. You said something similar, United States versus Duong, D-U-O-N-G. It's a 2017 published decision. You said, quote, the plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole. So under those decisions, and they're more like this, even when you're trying to figure out if a statute is ambiguous, you're still looking to the context of the phrase or the word at issue. And that leads me to what I think is the central problem with his claim. If you're trying to figure out what the Utah Aggravated Assault Statute means, you don't just look to the word or. It's part of a phrase, other means or force. But you wouldn't even really stop there, because the full statutory phrase at issue is, other means or force likely to produce death or serious bodily injury. But that wouldn't even be the natural starting point with how this statute is structured. Because the way this statute is structured is, it requires a Utah assault that is committed using other means or force likely to produce death or serious bodily injury. That's what you're interpreting. Not or, not means, or force. It's other means or force likely to produce death or serious bodily injury that is also an assault. And that gets to the underlying force problem. We think the most applicable case here is the Kendall decision. He distinguishes Kendall in his reply brief. He says that Kendall, the statute at issue, required the causation of bodily injury. That's true for one part of Kendall. It's not true for the part we're relying on. Kendall did a crime of violence analysis on both the federal 111 offense and also on the D.C. offense of assault on an officer. It's the D.C. offense that we're looking at. And this court held in Kendall that that was a crime of violence, even though it could be committed using, quote, an act that creates a grave risk of causing significant bodily injury. And this court said that an act that creates a grave risk of causing significant bodily injury, quote, will always involve the use of violent physical force. Well, the statute here is worded similarly. We're talking about other means or force likely to produce death or serious bodily injury. I can't conceive of a situation, and Mr. Faccatelli has, I don't think, pointed to a situation, and he's not pointed to a case that applied this to a situation, in which you could cause a likelihood of death or injury without at least being capable of causing pain. He's imagining that there's daylight between pain and injury. But the cases have rejected that proposition. If you're going to create a likelihood of injury or death, by definition you are creating a likelihood of pain. You can't do one without the other. And that's why Kendall uses the word impossible. And the moment you accept that proposition from Kendall, it applies on all fours here, and that's why his argument fails. I'd be happy to answer any other questions about the force component. If not, I'll turn to the recklessness issue. I have a question on the recklessness issue, and maybe a preliminary kind of question. I noticed in your brief you respond to the Utah case that they cite SALT. Yes. And I don't think you make the argument that they should have to cite federal law, since it's a plain error approach. How does that apply? I mean, maybe shouldn't there be federal law interpreting that statute in order for there to be plain error that supports the defendant? Yeah, we haven't made that argument. I didn't know. I mean, you didn't make the argument. I'm just wondering if you accepted that we could find, based on a Utah case, assuming we agreed with the analysis of the Utah case. And I understand that you don't. Sure. I mean, we did argue the first two steps of your premise. I don't think we quite got to the third. We did argue that this was unpreserved. We argued that it was subject to plain error view and that the absence of case law establishing this point is fatal. I don't think that we drew the distinction between federal and state case law, but we did make the argument that he's got to point to obvious error. But even in terms of SALT, there's this stray language, there's this sort of stray phrase from the SALT decision that seems to suggest that Utah recklessness doesn't require an awareness. But it's flatly contrary to everything else in Utah jurisprudence. We'll just start with the most obvious. It's contrary to the controlling statute. Utah is different in terms of how it treats mens rea versus the federal system. There's a specific statute, we've quoted to it and pointed you to it, that specifically defines the mental states for the entire criminal code. And that is the controlling statute. That is how Utah appellate courts define the mental states. And the recklessness subprovision specifically requires an awareness of the risk. So that's problem number one. Problem number two, if you shepherdize SALT, there's not a single Utah case that has applied to that stray phrase and said that Utah recklessness doesn't require an awareness of risk. So it's not been used that way by the Utah courts. Third, the number of Utah cases that we've cited have all said that recklessness does require an awareness of risk. And so if you look at Utah law as it exists, both statutorily and in terms of case law, it manifestly does require an awareness of risk. At a bare minimum, it doesn't obviously not require an awareness of risk. There's this last point that he's made, the circumstances versus results distinction. He draws this in his reply brief, and he's mentioned it again in oral argument today. If you have any concerns about that, I thought I'd address that just briefly. I don't think that was raised below either. I don't either. I don't know that you pointed that out. That is our first response to that. I went back and looked at the briefing. I can't find any place below in the briefing where he drew a distinction based on circumstances versus results. The district court doesn't address that distinction at all. It's nowhere to be found in the pleadings below. I don't think he really even made this argument. He certainly didn't develop it in his opening brief. So I don't think that that distinction is in front of you. But even if it were, that's the reason, I think, to reject it. But even if it were in front of you, I don't think it gets him the relief that he's seeking. And here's the reason why. The Utah Criminal Code draws a distinction between what the cases sometimes refer to as circumstances offenses versus results offenses, and it matters for mens rea purposes. So there's a whole line of cases. I've been involved in a few of them, trying to figure out whether a particular statute is a circumstance offense or a results offense. Then off to the side, you have this controlling mens rea statute that defines the mental states for all Utah criminal offenses. And so what happens in that recklessness provision that he's pointing to is the recklessness standard is written broadly enough so that it applies in the same way, regardless of whether the underlying statute is a circumstance offense or a results offense. But in both instances, if you just read the language that we've cited to you, in both instances it requires a conscious awareness in disregard of a substantial risk. And so the claim that he made in his mens rea argument is that Utah recklessness doesn't require an awareness of risk. And that's wrong. It always requires an awareness of risk. Now there may be some future case where you have to figure out whether a so-called circumstance offense can qualify, but that's different than saying that the mental state is too broad. The mental state always requires a conscious disregard of a substantial risk. So if that's the claim he's making, it fails under the plain terms of the statute. Now let me just go ahead, I've got a minute or two, and tell you why the circumstances distinction wouldn't even matter. Because it wouldn't matter for the Kendall quote that we've already relied on. I don't think you need to wade into this circumstance versus results distinction at all, because the federal cases have said that this kind of statute, whatever you want to call it, is going to qualify. It would be impossible, again to use the language from Kendall, it would be impossible to commit a Utah assault with an act that is likely to cause death or serious bodily injury without using force that is capable of causing pain. So circumstance, result, whatever you want to call it, you're still there under the Stokeland definition. But as to the recklessness claim he's made, it's at odds with the statutes and statute controls. Happy to address any questions about this or any other aspect of this case. If not, we'll submit it. Thank you. Just a few points to respond to. First of all, Counsel for the United States repeatedly talks about a prerequisite of pain. There's no prerequisite of pain in the Utah assault statute. Maybe it was there in Kendall, but Kendall also required bodily injury, regardless of whether it was D.C. or federal assault. So I think that's also sort of an issue. The reasonable probability test, which if there is any ambiguity on the face of the statute, sure, courts can absolutely look to guidance from state court decisions. But as this court in Titties noted, relying on the Supreme Court in Mathis, when it is plain from the language of the statute that it is broader than the force clause, there is no need to even dive down that rabbit hole. There was great discussion about OR not being disjunctive based on context of the statute. The statutory evolution makes clear that OR actually has a very specific meaning here, where the Utah legislatures, the elected representatives of the state of Utah, chose to criminalize a broader range of conduct than merely causing injury or using a deadly weapon. The fact that words can be synonyms is sort of a non-starter. And to the extent that there is any ambiguity between other means or force, quite frankly, the force is the redundancy, and we can almost ignore that. And other means would cover both the forceful and the non-forceful ways of committing the aggravated assault. What if instead of saying other means or force, the wording was other violent means or force? What would your position be then? My position would be that it fundamentally changes the nature and the language of the statute to, again, artificially narrow it to a much more circumscribed range of conduct, because you're qualifying the conduct with that violent adjective. And so this way, I think what the Utah legislatures intended to do was to put people on notice that we don't really care about the outcome. I mean, we kind of do, but we don't. What we're more concerned about is what y'all are doing out there. And therefore, if we give prosecutors the ability to charge assault, aggravated assault, when you use a deadly weapon, when you use that violent physical force, even though they didn't say it, or when you use other means that may produce an outcome, that's where we have a problem. I mean, quite frankly, it hasn't been charged yet, but there's a gentleman, a restaurant owner, attacked, quote, unquote, a patron for smoking outside of his restaurant with a fire extinguisher. And they are talking about that in terms of assault. There was no physical contact. It was the owner coming out with a fire extinguisher to put out the cigarette. Somewhat dramatic, but there it is. Did he, like, discharge the fire extinguisher? He ultimately ended up discharging the fire extinguisher. In your view, would Strychnine be an assault? Based on this court's history, absolutely. Absolutely. Poisoning is an indirect means of committing the assault, and I have no basis to argue otherwise. In fact, they consider that to be a use of force. That would not be other means. That is something different. I mean, isn't your snake example not unlike that? Do you just employ the snake to impart the force instead of yourself? No, the snake itself might not even be poisonous. So we're taking one or two steps back from the, let's say, the other means, but it's really the force of the poison, which is likely to produce death or serious bodily injury. Well, a snake's bite, I mean, whether it's poisonous or not, could certainly be forceful. It could be. I mean, if it's me, because I have an irrational fear of snakes, the thing in the car is enough alone to cause serious bodily injury. Like, it's not even right. But no, because you need to have the snake has to have the characteristics that it was likely to cause death or serious bodily injury, and quite frankly, it is not. It is not like the poison, which possesses the characteristics, which falls back into more in line with what the Supreme Court has said in terms of it is capable, which means it has the inherent characteristics to produce that end result and likely is not synonymous with capable. I don't feel any need to talk further unless there are more questions. Thank you, Counselor. Okay, thank you. Submit the case. Yes, case will be submitted and Counselor excused. Thank you.